**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

HUNG -LIN WU and
WU TRUST

      Plaintiffs,

v.                                             Civil Action No.: 2:05cv699

STANLEY TSENG,
RICHARD L. KREGER, Individually
and as Custodian for Richard H. Kreger,
Robert C. Jackson, Ryan S. Kreger,
Toni M. Kreger, and Patricia House,
RICHARD H. KREGER,
ROBERT C. JACKSON,
RYAN S. KREGER,
TONI M. KREGER,
PATRICIA HOUSE,
PETER MCBRIDE, Trustee, and
DAVIS WETLANDS BANK, L.L.C.

      Defendants.

## <u>AMENDED OPINION & ORDER</u>

Plaintiffs Hung-Lin Wu and Wu Trust ("Plaintiffs") and Defendants Richard L. Kreger

individually and as custodian for the other individually-named defendants, Richard H. Kreger,

Robert C. Jackson, Ryan S. Kreger, Toni M. Kreger, and Patricia House ("the Kreger

Defendants"), have moved for Partial Summary Judgment against Defendant Davis Wetlands

Bank, LLC ("Defendant Davis "). Defendant Davis asserts its claim to the disputed real property

under theories of equitable lien and resulting trust. Plaintiffs and the Kreger Defendants contend

that Defendant Davis' claim is without merit because there is no written agreement conveying

the real property to Defendant Davis, and because any interest Defendant Davis had in the

property was not recorded until after the interests of Plaintiffs and the Kreger Defendants had been registered.  The Court agrees.  Plaintiffs' and the Kreger Defendants' Motions for Partial Summary Judgment are thus **GRANTED**.

## I. PROCEDURAL HISTORY

This action was filed on December 2, 2005, by Plaintiffs against Stanley Tseng ("Mr. Tseng"), the Kreger Defendants, and Peter McBride ("Mr. McBride").  Doc. 1.  On March 31, 2006, Defendant Davis filed a Motion to Intervene and a Memorandum in Support of the Motion, seeking to intervene as of right.  Docs. 9, 10.  On April 14, 2006, Plaintiffs submitted a Brief in Opposition to the Motion to Intervene, and the Kreger Defendants submitted their Brief in Opposition, incorporating Plaintiffs' arguments in opposition to the Motion.  Docs. 11, 12.  On April 19, 2006, Defendant Davis filed its reply brief.  Doc. 13.  The Court granted Defendant Davis' Motion to Intervene on June 6, 2006.  Doc. 17.

Defendant Davis filed its Answer to Plaintiffs' Complaint on June 6, 2006.  Doc. 18.  Plaintiffs filed an Amended Complaint against Mr. Tseng, Mr. McBride, the Kreger Defendants and Defendant Davis on June 26, 2006.  Doc. 19.  Mr. McBride answered the Amended Complaint on June 28, 2005 (Doc. 20), the Kreger Defendants answered on July 11, 2006 (Doc. 21), and Defendant Davis answered on July 17, 2006 (Doc. 22).

On August 30, 2006, the Kreger Defendants and Plaintiffs each filed a Motion for Partial Summary Judgment against Defendant Davis.[1]  Docs. 23 and 24, respectively.  Only Plaintffs filed a Memorandum of Support for the Motion.  Doc. 25.  Defendant Davis filed its Brief in

---

[1]Mr. McBride did not file a brief in either support or opposition to the pending Motion for Partial Summary Judgment.

Opposition to Motions for Partial Summary Judgment on September 11, 2006.  Doc. 26.  On

September 18, 2006, the Kreger Defendants and Plaintiffs filed Reply Briefs in Support of their

Motion for Partial Summary Judgment.  Docs. 27 and 28, respectively.  A hearing on the two

Motions for Partial Summary Judgment was held on October 12, 2006.  Doc. 32.

## II. FACTUAL BACKGROUND

The subject of the pending litigation and the instant Motion is approximately 880 acres of

real property located in Chesapeake, Virginia ("the Property").  Mr. Tseng purchased the

Property in or about April of 1984 and has held record title until or about[2] the date that default

judgment was recorded in favor of Plaintiffs on August 17, 2005.  Doc. 11, Ex. A ¶ 7; Doc. 1 at ¶

14, 16.

### A. Claims on the Property

In this action, Plaintiffs are seeking to set aside as fraudulent a deed of trust executed by

Mr. Tseng in favor of the Kreger Defendants and Mr. McBride.  See Doc. 1 ¶¶ 20-23.  The deed

of trust, purportedly securing six (6) individual promissory notes, was allegedly negotiated on

April 29, 2005, just prior to Plaintiffs obtaining a $11,279,836.00 judgment against Mr. Tseng on

May 12, 2005.  Id. at ¶¶ 14, 16.  Plaintiffs desire to sell the Property in order to satisfy their

judgment against Mr. Tseng.  Id. at ¶¶ 20-23.  Plaintiffs' judgment lien on the Property was

properly docketed on August 17, 2005.  See id. at ¶ 14, 16.

---

[2]The only title search on the Record is dated April 8, 2005 and shows Stanley Tseng as
the title holder.  Doc. 11 at 3, Ex. D.  This date is prior to the transfer of the deed of trust to the
Kreger Defendants (April 29, 2005), and prior to the default judgment of the Virginia Beach
Circuit Court, conveying the Property to Defendant Davis (February 10, 2006).  Accordingly,
based on the facts before the Court, it can be said only that the last record owner as of April 8,
2005 is Mr. Tseng, and the Plaintiffs recorded their judgment lien on the Property on August 17,
2005.

On January 3, 2006, one month after the instant action was filed, Douglas S. Davis ("Mr. Davis"), an environmental consultant, and Davis Environmental Consultants, Inc. ("Consultants"), an entity wholly owned and operated by Mr. Davis, filed a "Bill of Complaint for Specific Performance" against Mr. Tseng in the Virginia Beach Circuit Court, seeking specific performance of a contract entered into between Mr. Tseng, Mr. Davis, and Consultants in 1998 ("the 1998 Contract") to convey the Property to Davis Wetlands Bank, LLC ("Defendant Davis").[3]  See Doc. 10, Ex. 1.  In the Bill of Complaint, Mr. Davis and Consultants represented the following to the Virginia Beach Circuit Court, in relevant part:

> The [1998 Contract] provides that Davis or Tseng may demand that the Property and the Project be "converted to entity ownership," with each party to have an ownership interest in the entity equivalent to their interest in the net income of the Project. . . .  Despite demand by Davis, Tseng refuses to convey the Property into [Davis] as set forth in the [1998 Contract]. . . .  Now therefore, Plaintiffs respectfully request this Court to enter an order directing Tseng to convey the Property into the [Intervenor].

Id. at ¶¶ 14, 17.  Neither Plaintiffs, the Kreger Defendants, nor Mr. McBride were named as parties to the action in Virginia Beach, nor were they given notice of such.  Doc. 25 at 2.

Mr. Tseng made no appearance in the action and Defendant Davis sought a default judgment.  Doc. 10, Ex. 1 at 2.  On February 10, 2006, the Virginia Beach Circuit Court granted default judgment as follows: "judgment by default be, and it hereby is, entered for Plaintiffs, Douglas D. Davis and Davis Environmental Consultant, Inc. . . .  The Property . . . is hereby conveyed to Davis Wetlands Bank, LLC as required by the parties' 1998 agreement."  Id.

---

[3]Davis Wetlands Bank, LLC was allegedly formed on August 25, 1998 by agreement of Mr. Davis and Mr. Tseng.  See Docs. 10 ¶ 15; 25, Ex. 7 (printout of State Corporation Commission).  Davis Wetlands is a Virginia limited liability company with its principal place of business located in Virginia Beach.  Doc 25, Ex. 7.

Defendant Davis moved to intervene in this action on March 31, 2006, claiming that it is the owner of the Property by virtue of the Virginia Beach Circuit Court's Order of Judgment and by having established an equitable lien pursuant to the 1998 Contract.  See generally Doc. 10. Defendant Davis also claims that it has a priority interest in the Property by virtue of having established, inter alia, a resulting trust through the 1998 Contract, as well as ancillary oral agreements and understandings.  Doc. 13 at 3-4.

In granting Defendant Davis' Motion to Intervene, this Court did not pass on the validity of the theories set forth by Defendant Davis, by which it claims priority interest over the Plaintiffs' and the other Defendants interests in the subject Property.  Doc. 17 at 5.  The Court found only that Defendant Davis had a "direct and substantial interest in the Property" by virtue of the default judgment of the Virginia Beach Circuit Court; thus, as a threshold matter, Defendant Davis met the requirements to intervene in this action pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.  Id.

### B. The 1998 Contract

The stated purpose of the 1998 Contract, entered into on January 15, 1998, was to form a joint venture for the purpose of developing the Property to make it available for "compensatory wetlands mitigation."  See Doc. 11, Ex. A preamble and ¶ 1.  The contract apportions rights and responsibilities as between the parties for purposes of developing the Property; notably, that Mr. Tseng, as owner of the Property, shall make it available for wetlands migration and will advance the first $100,000 of all fees and costs for the project, and that Mr. Davis would be responsible for overseeing construction and conversion of the Property.  Id. at ¶¶ 1, 2.

Defendant Davis' legal claim to the Property relies upon paragraph five (5) of the 1998 Contract, which provides that the Property and the wetlands project "may be converted to entity ownership, in which case, if there has been no breach or default by Davis at the time of

conversion, the parties shall have ownership interests in said entity(ies) as set forth in paragraph 3 above." Id. at ¶ 5. Paragraph three (3) specifies that profits in the wetlands mitigation project were to be apportioned 82% to Mr. Tseng and 18% to Mr. Davis and Consultants. Id. at ¶ 3.

After entering into the 1998 Contract, the parties to that agreement executed an addendum extending the original term. Doc. 11, Ex. C. In addition, Mr. Davis and Mr. Tseng executed a Sales Commission Agreement dated June 15, 2004, which provides in relevant part that the "commission fee to be paid to [Davis Environmental] will not exceed 50% of the sale price" of each wetlands mitigation credit sold from the mitigation bank. Id., Ex. B. The Sales Commission Agreement further states that "[t]his commission is not based on any hourly rate but is based on the difficulty and complexity of the sale of wetland bank credits." Id. Neither the 1998 Contract, the addendum, nor the Sales Commission Agreement contain any other substantive provisions relevant to a transfer of the Property to Defendant Davis. Id., Exs. A, B, & C.

### III. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990). Summary judgment is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986). The facts and inferences drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir.

1995).  If the Plaintiff and Defendants dispute the facts of the case, "plaintiff's version of the facts must be presented where the parties' versions conflict, at least to the degree that [her] allegations have support in affidavits, depositions or other documentary evidence."  Magnuson v. Peak Technical Servs., 808 F. Supp. 500, 504 (E.D. Va. 1992) (citations omitted).

In order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in the pleadings."  Doyle v. Sentry Ins., 877 F. Supp. 1002, 1005 (E.D. Va. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories, or other evidence to show genuine issues for trial. Celotex, 477 U.S. at 324.  When the nonmoving party fails to make a sufficient showing establishing an essential element of his case and he bears the burden of proof on that issue, "there is 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322; Anderson, 477 U.S. at 254.

IV. ANALYSIS

Defendant Davis, in its Motion to Intervene (Docs. 9, 10) and Reply in Support of its Motion to Intervene (Doc. 13), asserts that the 1998 Contract and its possession of the Property since that time, created an equitable lien on the Property.  Doc. 10 at 3; see Doc. 26 at 3.  In the alternative, Defendant Davis contends that, as evidenced by the 1998 Contract and oral communications between Mr. Tseng and Mr. Davis, Defendant Davis is entitled to the Property

as a resulting trust.[4]  Doc. 13 at 3-4.

In their Motions for Partial Summary Judgment, Plaintiffs and the Kreger Defendants allege that Defendant Davis' claim to the Property is meritless.  Plaintiffs and the Kreger Defendants assert that Defendant Davis has no claim to the Property for purposes of this matter, because (1) under Virginia law, an agreement creating an equitable lien must be in writing; (2) the only writing that could create an equitable lien is the 1998 Contract, which fails to sufficiently evidence Mr. Tseng's intent to create an equitable lien on the Property, and thus Defendant Davis has no legal claim to the land; and, (3) even if an equitable lien was created, Defendant Davis failed to comply with Virginia's recording statute, and therefore its claim is junior to Plaintiffs' and the Kreger Defendants' prior recorded interests.  Docs. 25, 28 at 4.

In its Motion in Opposition to Partial Summary Judgment, Defendant Davis asserts that an oral agreement and equitable lien cannot be recorded; therefore, it did not have to comply with the Commonwealth of Virginia's recording statute.[5]  Doc. 26 at 4-6; see Doc. 13 at 3-5.

_____

[4]It appears that Defendant Davis has abandoned this argument.  It was raised only in its Rebuttal brief to the Motion to Intervene, and was not mentioned in the Motion in Opposition to Partial Summary Judgment.  See Docs. 11, 13, 26.  At hearing, this was not pursued by Defendant Davis' counsel.  This matter will nevertheless be discussed by the Court for the sake of thoroughness and clarity.

[5]Defendant Davis' brief is not entirely clear when stating which arguments it is relying upon, and which facts allegedly support these arguments. Defendant Davis appears to state that both its 1998 Contract with Mr. Tseng and later oral communications between these parties created an equitable lien. Doc. 26 at 4 ("Virginia's recording statutes . . . are further inapplicable to void Davis Wetlands Bank's equitable lien because the agreement between Tseng and Douglas Davis, that gave rise to Davis Wetlands Bank's claim of equitable lien, arose, at least in part, from an oral contract."). The confusion may be attributed to Defendant Davis' attempts to bolster weaker arguments with viscerally persuasive, but ultimately spurious, facts. As will be discussed infra, only the written instrument may establish a claim for equitable lien; therefore, Defendant Davis' argument that oral agreements supplement a finding of equitable lien are irrelevant.  See infra, IV(A).  Oral agreements may support a resulting trust; however, the facts

-8-

Defendant Davis thus concludes that because it was not bound by the recording statute, it was entitled an interest in the Property as of the date of the 1998 Contract, giving it superior claim to the Property.  Doc. 26 at 7.

### A. Equitable Lien

Defendant Davis asserts that in the 1998 Contract, Mr. Tseng expressed an intention to convey the Property to Defendant Davis; that ¶ 5 of the agreement represents Mr. Tseng's desire that the Property be "converted to entity ownership."  Doc. 11 at 3.  Defendant Davis further asserts that by "entity" the agreement meant Davis Wetlands Bank, LLC.  Id.  Thus, Defendant Davis claims an equitable lien was created.  Id.

It is settled law in the Commonwealth of Virginia that an equitable lien must be in writing.  As explained by the Supreme Court of Virginia:

> The doctrine may be stated in its most general form that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described and identified, security for a debt or other obligation . . . created an equitable lien upon the property so indicated which is enforceable against the property. . . . Under like circumstances a mere verbal agreement may create a similar lien upon personal property.

Harnsberger v. Wright, 185 Va. 586, 589 (1946) (emphasis added).  This distinction has been recognized repeatedly in both state and federal cases applying Virginia law.  See, e.g., Harper v. Harper, 159 Va. 210, 218 (1932) (same);  Brown v. Ford, 120 Va. 233, 245 (1917) (same); In re

---

do not show that a resulting trust was created here.  See infra, IV(C); Doc. 26 ¶ 4 (the only facts alleged in support of the existence of an oral agreement are contained in Defendant Davis' Motion in Opposition: "Pursuant to an oral contract, Tseng and Davis agreed that, upon Douglas Davis' request, the subject Property could be conveyed into Davis Wetlands Bank.").

James R. Corbitt Co., 20 B.R. 460, 461 (Bankr. E.D. Va. 1982)("To establish an equitable lien, Virginia law requires a written contract that shows intent to charge a particular piece of property.")(citing Hoffman v. First Nat'l Bank of Boston, 205 Va. 232 (1964)); 51 Am. Jur. 2d Liens § 42 (2000) ("Unless otherwise provided by statute, a lien on personal property that is valid as between the parties and their privies may be created by an oral agreement.  However, a written agreement is generally necessary to create an equitable lien on real property by contract.").                The only written agreement offered by Defendant Davis to date is the 1998 Contract.  The 1998 Contract does not in any manner contain the necessary elements of an equitable lien.  In order to create such a lien, there must be a clear intent to make a specific piece of property security for an identifiable debt and proof that the "property had actually been set aside and appropriated for this particular purpose. . . ."  Hoffman v. First Nat'l Bank of Boston, 205 Va. 232, 237 (1964).  The language of the written contract only states that the Property "may" be conveyed to entity ownership.  Doc. 11, Ex. A ¶ 5.  The 1998 Contract nowhere states when, why, specifically to whom, or upon happening of what event the Property would be transferred.  See Doc. 11, Ex. A.  Further, because the Property is real property, the existence of Defendant Davis' alleged equitable lien cannot be based on oral agreements beyond the scope of the 1998 Contract.  Therefore, Defendant Davis cannot claim the benefit of an equitable lien as a matter of law.

At hearing, Defendant Davis' counsel argued that it had an equitable lien by virtue of its part performance of an oral contract for transfer of land, including that Defendant Davis was in possession of the land, that Defendant Davis provided services pursuant to this oral agreement, and that refusal to transfer interest to Defendant Davis as part performer would operate a fraud.

Defendant Davis' thus alleges that his possession of the Property entitles him to the Property. This is not the case.

Defendant Davis relies on two cases, In re Wells, 296 B.R. 728 (Bankr. E.D. Va. 2003), and In re Smith, 348 F. Supp. 1290 (E.D. Va. 1972), to support its position that an oral agreement to convey property is removed from the Statute of Frauds by part performance, and that a trustee in bankruptcy (as was the case in Wells) occupies the position of a lien creditor. See Smith, 348 F. Supp. at 1293 ("the trustee in bankruptcy occupies the position of a lien creditor"); Wells, 296 B.R. at 731.  Therefore, Defendant Davis's counsel contends that an oral agreement for transfer of land where there has been part performance is valid and effective as against lien creditors.

While counsel correctly states the law, he misconstrues its application to the present case. The two cases on which Defendant Davis' counsel so heavily relies are inapplicable to the present case because Smith, which modifies Wells as it applies in the district court context, only applies to those agreements between a debtor and creditor; it does not, and could not logically, apply to third party creditors, because there is no means to put third parties on notice of the oral agreement and the creditor's rights in the subject property.  See Smith, 348 F. Supp. at 1293-94; Wells, 296 B.R. at 733 ("the trustee can take title only to the extent that debtors have title"). Further, Smith applies specifically to resulting trusts, Wells to constructive trusts, and neither exists here.  See supra IV(C); See Smith, 348 F. Supp. at 1293-94 (noting that Virginia's recording statutes do not apply to resulting trusts); Wells, 296 B.R. at 731 (observing that § 11-1, the statute that requires transfers of real property to be in writing, would invalidate the constructive trust at issue); Doc. 26 (arguing only for the existence of an equitable lien, and not

-11-

of a resulting trust or constructive trust).  While the Court understands how Defendant Davis'

counsel found these cases appealing, a mere reading of the cases reveals them to be inapposite to

the facts of the present matter.

### B. Virginia's Recording Statute

Defendant Davis asserts that, whether its claim of interest in the land be based on a

theory of equitable lien or resulting trust (infra, IV(C)), it was not bound to comply with

Virginia's recording statutes, because these statutes do not apply (1) to equitable liens where the

grantee is in possession of the property, or (2) to resulting trusts or equitable liens grounded in

oral agreements.  Doc. 26 at 3-4.  As discussed above, an equitable lien must be in writing, and

no equitable lien was created by the 1998 Contract or any other writing in the Record.  See infra,

IV(A).  Should the Court, however, find that an equitable lien existed or that Defendant Davis is

otherwise entitled to the Property, it nevertheless failed to comply with Virginia's recording

statutes.  Failure to comply with the statutes renders Defendant Davis' claim junior to those of

Plaintiffs[6] and the Kreger Defendants.

Record title in the Commonwealth of Virginia is governed by two sections of the

Virginia Code:  §§ 11-1 and 55-96.  These two sections, read together, require that every

contract for conveyance of real estate be in writing, and that every contract conveying real estate

be recorded.  See Va. Code Ann. §§ 11-1 and 55-96.

### 1. Section 11-1 of the Virginia Code

Section 11-1 addresses those contracts that are void unless in writing.  Specifically, §

11-1 provides:

---

[6]Right to title by way of judgment lien, docketed on August 17, 2005.  Doc. 25 at 6.

> Every contract, not in writing, made in respect to real estate or goods and chattels in consideration of marriage, or made for the conveyance or sale of real estate, or a term therein of more than five years, and, except as otherwise provided in § 8.2-402 of the Uniform Commercial Code, every bill of sale or contract for the sale of goods and chattels when the possession is allowed to remain with the seller, shall be void, both at law and in equity, as to purchasers for value and without notice and creditors. . . .

Va. Code Ann. § 11-1 (2006).  Relevant to the instant matter, this section states that every contract made in the conveyance or sale of real estate that is not in writing is void as to a purchaser for value without notice and creditors (bona fide purchasers/creditors).

Defendant Davis argues that an oral agreement is removed from the recording statutes, because of the mere impossibility of recording something not committed to writing.  This neither bears logic, nor the law.[7]

Because the language of the statute specifically refers to "written" contracts, an early line of cases in Virginia—those cited substantially by Defendant Davis in support of its claim—held that the statute had no application to oral contracts for the conveyance of real property, and thus a party to an oral contract could not be affected by a subsequently recorded judgment lien.  See Floyd v. Harding, 69 Va. (28 Gratt.) 401 (1877); Doc. 26 at 4 (citing Young v. Derivies, 72 Va.

---

[7]Defendant Davis cites a number of cases in support of this argument; unfortunately, all of them are either inapplicable or are no longer good law.  See Doc. 26 4-7. Specifically, Defendant Davis cites: Borst v. Nalle, 69 Va. (28 Gratt.) 423 (1877) (overturned by enactment of § 11-1); Barnes v. American Fertilizer Co., 144 Va. 692 (1925) (expressly acknowledging that the rule in Floyd and Young is no longer the law of Virginia, but holding that consent decrees are not subject to the recording statutes); Dulany v. Willis, 95 Va. 606 (1898) (equitable mortgage based upon a clear and unambiguous written agreement may be defeated by a judgment lien); In re Wells, 296 B.R. 728, 731 (Bankr. E.D. Va. 2003) (section 11-1 renders the parol agreement void);  In re Smith, 348 F. Supp. 1290 (E.D. Va. 1972)(resulting trusts are not circumscribed by Virginia's recording statutes).  Because Defendant Davis is not asserting a right under a consent decree or equitable mortgage theory, and his argument for resulting trust fails, these cases fail to support its argument.  See supra IV(C).

304 (1879)(progeny of <u>Floyd</u>).  This line of cases later came under criticism.  As noted by the

Supreme Court of Virginia:

> The course of [these] decision[s] in Virginia had led to this
> remarkable result:  that on an oral contract for the sale of land under
> which the purchaser took possession and paid all the purchase money
> before a creditor of the vendor obtain judgment, the purchaser
> acquired a good title in equity as against such creditor, while under
> a written contract and a deed of conveyance, neither of which was
> recorded, the creditor's right was paramount to that of the purchaser.
> The purchaser by parol got a good title in spite of the statute of frauds
> and perjuries, and his title was not effected by the registry law,
> because he could not have that recorded which was not written, while
> the purchaser by writing, who complied with the statute of frauds,
> lost his rights as against a creditor, by failing to comply with a
> registry law when it was in his power to do so.

<u>Straley v. Esser</u>, 117 Va. 135, 143 (1915)(discussing <u>Floyd v. Harding</u>, *supra* and its progeny).

Notably, this "remarkable result" is the same irrational conclusion that Defendant Davis wishes

this Court to reach.  <u>See</u> Doc. 26 at 4 (citing <u>Young</u>'s holding that "oral agreements were 'not

held under titles which come under the influence of the registration acts, but under equitable

titles which could not be affected by the provisions of those acts.'").

   In order to resolve the inequity which resulted from the <u>Floyd</u> and <u>Young</u> line of cases,

the Virginia legislature enacted what is now § 11-1 of the Virginia Code.  Section 11-1 was

intended to remedy the anomaly caused by <u>Floyd</u> and its progeny.  <u>See</u> <u>Stein v. Pulaski Furniture

Corp.</u>, 217 F. Supp. 587, 589-90 (W.D. Va. 1963); <u>Page v. Old Dominion Trust Co.</u>, 257 F. 402,

403-04 (4th Cir. 1919).

   Accordingly, § 11-1 expressly addresses, and nullifies, Defendant Davis' contention that

conveyances of land could be achieved by oral agreement without need for recording.  Because

this argument is illogical and unsubstantiated by the law, the Court rejects it and finds the terms

of § 11-1 controlling.

## 2. Section 55-96 of the Virginia Code

Section 55-96 provides for the contracts that are void as to creditors and purchasers until recorded.  This section states:

> A. 1. Every (i) such contract in writing, (ii) deed conveying any such estate or term, (iii) deed of gift, or deed of trust, or mortgage conveying real estate or goods and chattels and (iv) such bill of sale, or contract for the sale of goods and chattels, when the possession is allowed to remain with the grantor, shall be void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors, until and except from the time it is duly admitted to record in the county or city wherein the property embraced in such contract, deed or bill of sale may be. . . . The mere possession of real estate shall not, of itself, be notice to purchasers thereof for value of any interest or estate therein of the person in possession.

Va. Code Ann. § 55-96 (1950, as amended)(emphasis added).  Essentially, under this section, every contract conveying property shall be void as to all bona fide purchasers or creditors without notice until the deed or written contract conveying the property is duly recorded.

Defendant Davis argues that § 55-96 exempts it from the recording requirement (a similar argument can be made, but is not asserted, for § 11-1), because Davis reads the section to apply only to those grantees of land who are not in possession.  Doc. 26 at 5-6 (citing "such bill of sale, or contract for the sale of goods and chattels, when the possession is allowed to remain with the grantor"); see Va. Code Ann. § 11-1 (2006)(a similar portion of § 11-1 reads "every bill of sale or contract for the sale of goods and chattels when the possession is allowed to remain with the seller").  Defendant Davis suggests that the phrase "when the possession is allowed to remain with the grantor" was meant to modify all four subsections listed before it.  Doc. 26 at 5-6.  However, this interpretation neither squares with the language of the statute nor its history.

As an initial matter, Defendant Davis' interpretation is expressly contradicted by the history of the statute; specifically, the last sentence of the section, which provides that possession of real estate alone is not sufficient notice of ownership to protect against claims of subsequent purchasers of creditors.  That provision was added to change the common law rule that possession by a grantee put a prospective purchaser on notice of the grantee's rights. Norfolk & Portsmouth Traction Co. v. C.B. White & Brothers, Inc., 113 Va. 102, 105-06 (1912). The change was intended to protect parties dealing with the grantor by allowing those parties to rely on the land records to determine interests in property rather than to subject them to hidden liens.  Id.  This change was explained by the Supreme Court of Virginia in Norfolk & Portsmouth Traction Co. v. C.B. White & Brothers, Inc., 113 Va. 102 (1912).  After highlighting the passage concerning possession in § 2465 (the predecessor to § 55-96), the Court stated:

> As will be observed, section 2463 relates to contracts not in writing, while the provisions of sections 2464 and 2465 relate to written instruments. . . .  Those sections are the same now as they were when the case of Chapman v. Chapman, 91 Va. 397, 21 S.E. 813, 50 Am. St. Rep. 846 1895), was decided, except the language italicized in section 2465. . . . That section was amended by adding that language after the decision in the case of Chapman. . . . In that case it was held that a purchaser for value of real property in the possession of another was put upon his inquiry as to the rights of the one in possession, and is affected with knowledge of whatever rights such possessor has, and such knowledge was held to be the same in effect as the notice which is imputed by the registry laws.  The object of that amendment of section 2465, as generally understood by the courts and the legal profession, was to abolish the common-law doctrine of *Chapman v. Chapman*, and to provide that the possession of such estate or term, without notice of other evidence of title in such occupant, should not be notice to such subsequent purchaser for valuable consideration.

Id. at 105-06 (emphasis added).

As explained by the Supreme Court of Virginia, the only time when the language

concerning possession is relevant is when that possession has been transferred to the grantee. Under those circumstances, the law of Virginia is that mere possession by an alleged grantee, as Defendant Davis claims here, is not sufficient to put bona fide purchasers on notice.  See Norfolk & Portsmouth, 113 Va. at 107 (holding that mere possession by a grantee under an oral agreement is not notice); Kiser v. Clinchfield Coal Corp., 200 Va. 517, 521-22 (1959)(noting the statutory change in the Chapman common-law rule and stating that possession by the grantee "shall not be notice to subsequent purchasers for valuable consideration").

Defendant Davis' interpretation also renders the final sentence of the statute meaningless, in contravention of fundamental canons of statutory analysis.  As the Fourth Circuit has noted, "[i]t is a classic canon of statutory construction that courts must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous."  Discover Bank v. Vaden, 396 F.3d 366, 369 (4th Cir. 2005) (internal quotations omitted); Soliman v. Gonzales, 419 F.3d 276, 283 (4th Cir. 2005) ("[W]e are 'loath' to read one statutory provision so as to render another provision of the same statute superfluous").

Because Defendant Davis' characterization of § 55-96 neither comports with the plain language of the statute, nor with its history, it cannot avail itself of the argument that its possession of the Property did not require it to record its interest in it.  The Court finds that the phrase upon which Defendant Davis relies was meant only to modify the terms directly before it—subsection (iv)—and not the list of scenarios that precede it (subsections (I), (ii), and (iii)). Thus, where Defendant Davis does not have a written agreement entitling him to the Property, and because its right to the property was not recorded until default judgment was entered in its

-17-

favor by the Virginia Beach Circuit Court on February 10, 2006, the Court finds that Defendant

Davis does not have an interest in the Property superior to that of Plaintiffs and the Kreger

Defendants.

### C. Resulting Trust

 Defendant Davis alleges that, even if the Court does not find that an equitable lien was

created by the 1998 Contract, a resulting trust was created by Mr. Tseng's intention to transfer

the Property to Defendant Davis in the 1998 Contract and in oral communications[8] between Mr.

Tseng and Mr. Davis.  Doc. 13 at 3-4 ("Tseng's state of mind, his intention, to create an

equitable lien also served to establish a resulting trust, when Tseng retained title."); see Salyer v.

Salyer, 216 Va. 521, 525 (1975)("A resulting trust . . . is enforceable in equity and may arise

without a writing.").  Defendant raised the resulting trust argument in his Reply Memorandum in

support of his Motion to Intervene, but has not raised it again in his Motion in Opposition to

Partial Summary Judgment.  Accordingly, Plaintiffs and the Kreger Defendants assert that by

virtue of the lack of argument in its latest motion, Defendant Davis has "abandoned" the

resulting trust argument.  While the Court cannot be certain that this is the case, there is little

support for the accuracy of Defendant Davis' claim.

 "A resulting trust is an indirect trust which arises from the intention of the parties, or the

nature of the transaction."  Tiller v. Owen, 243 Va. 176, 180 (1992).  "In order for a resulting

trust to arise, the would-be beneficiary must pay for the property, or assume payment of all or

part of the purchase money prior to or at the time of purchase, and have legal title conveyed to

---

[8]Defendant Davis does not substantiate what these oral agreements entailed.  Rather, it only alleges that agreements were made in which Mr. Tseng stated his intention to transfer the Property to Defendant Davis.  Doc. 24 ¶ 4.

another without any mention of a trust in the conveyance." Id. (citing Leonard v. Counts, 221

Va. 582, 588 (1980).  However, "[t]he trust must arise from the original transaction, and at the

time it takes place, and at no other time."  Morris v. Morris, 248 Va. 590, 594 (1994); see Salyer

v. Salyer, 216 Va. 521, 526 (1975)("It is necessary that the beneficiary prior to or at the time of

the purchase should pay or assume an obligation to pay the purchase price.  It is not enough that

subsequent to the purchase he pays or agrees to pay the purchase price.")(internal quotations

omitted).

        While Defendant Davis does not substantiate its argument with many facts, applying

Virginia law, Defendant Davis essentially suggests that Mr. Tseng, as "would-be beneficiary" of

the trust, paid for the land in 1984 and then conveyed it in 1998 to Defendant Davis without

mentioning the trust in the conveyance.  See Doc. 13 at 3-4.  These facts, however, fail to create

a resulting trust.  Mr. Tseng purchased the property in 1984 and was the title owner until he

conveyed it by Deed of Trust to the Kreger Defendants in 2005; or in the alternative, until the

Property became subject to the judgment lien in favor of Plaintiffs on August 17, 2005.  Doc. 11,

Ex. A ¶ 7; Doc. 1 at ¶ 14, 16 (the Record is unclear).  Mr. Tseng did not contract with Mr. Davis

until January 15, 1998, and Defendant Davis was not incorporated until August 25, 1998.  See

Docs. 10 ¶ 15; 25, Ex. 7.  To create a resulting trust, Defendant Davis would have had to have

given Mr. Tseng the purchase money (or services in lieu of payment)[9] at the time the property

was purchased; thus, making Mr. Tseng trustee for land paid for and owned by Defendant Davis.

This, however, would be impossible under the given facts, because the alleged transfer of land

---

        [9]Defendant Davis alleges that a resulting trust was created at the time the 1998 Contract
when Mr. Tseng intended to convey the Property to Defendant Davis in exchange for its efforts
developing the Property into wetlands.  Doc. 13 at 4.

and money as between would-be trustee and beneficiary, did not occur until fourteen (14) years after the Property had been purchased by Mr. Tseng.

Because a resulting trust must be created at the time of purchase—that is, when money is paid for the benefit of another—there can be no resulting trust here.

V. CONCLUSION

Defendant Davis has failed to meet its burden to withstand summary judgment. It has not alleged any specific facts that show it has a legally-grounded interest in the Property. Specifically, Defendant Davis has been unable to present facts that meet the requirements of the two theories upon which it relies: equitable lien and resulting trust. Further, its attack on the recording statutes is rooted in inapplicable and overruled law. It has made inconsistent arguments that are supported by meager facts. Accordingly, Plaintiffs and the Kreger Defendants have successfully shown, based on the evidence in the Record, that Defendant Davis does not have a cognizable claim before this Court. The Court **GRANTS** Plaintiff and the Kreger Defendants' Motions for Partial Summary Judgment. Defendant Davis's claims are **DISMISSED**. Defendant Davis remains a nominal party to this action, however, for purposes of prioritizing creditors' rights in selling the Property to satisfy Mr. Tseng's debts.

It is so **ORDERED**.

/s/
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 24, 2006

-20-